(No. 82-CC-1805-▮▮▮▮▮▮)

CHARLES M. SKAJ, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed November 4, 1982.*

CHARLES M. SKAJ, *pro se*, for Claimant.

TYRONE C. FAHNER, Attorney General (SANDRA L. ANDINA, Assistant Attorney General, of counsel), for Respondent.

HOLDERMAN, J.

Claimant in this instance was a resident of the State-ville Correctional Center.

On August 8, 1981, Claimant was sitting on a bench in the protective custody bull pen of the institution. The B-East bullpen is a relatively small enclosure with bars constituting three walls and a stairwell constituting the fourth wall. The seating provided is benches placed up against the bars which serve as one of the walls.

While Claimant was seated in the area indicated, the general population gym line started to come into the cell house, passing on all three sides of the protective custody bull pen on the way to the stairs.

Claimant was sitting with his back to the gym line when someone called his name. He turned around to look, and a general population inmate shoved his fist through the bars, striking Claimant in the face and injuring him. The individual who struck him was in the general population gym line.

Claimant states he does not know who struck him because the incident happened so fast and the officer on duty did not see the incident so he could not identify the attacker.

Claimant bases his claim on section 3-7-4 of the Unified Code of Corrections (Ill. Rev. Stat., ch. 38, par. 1003-7-4.

"Section 3-7-4. Protection of Persons. The Department shall establish rules and regulations for the protection of the person and property of employees of the Department and every committed person."   .

There are several issues involved in this case.

1. Was Respondent guilty of negligence?

This Court, in the case of *Carey v. State*, 77-CC-0329, held that the State was not negligent because the need for protection was not known by the institution. In the present case, there was some knowledge on the part of Respondent that the Claimant would need some protective custody which was one reason he was in the bull pen at the time of the incident.

2. Was Claimant guilty of contributory negligence?

This brings up the question of whether or not Claimant, by sitting in the spot where he was vulnerable to the attack, was guilty of contributory negligence by placing himself in a position where he could be easily attacked by someone in the general population line. The evidence shows that the room was large enough that Claimant could have removed himself from this position even though he might have had to stand up.

The warden raises the question as to whether or not the attack in question was provoked by Claimant or was one engaged in by mutual consent. The record appears devoid of any evidence to support either contention.

To find the State guilty of contributory negligence which was the proximate cause of Claimant's injury would, in practice, make the State an insurer of the safety of all its inmates. To do this, the State would have to be knowledgeable of all the personal animosities, feuds, likes and dislikes of every inmate. It would, in practice, necessitate the complete isolation of each and every inmate from any contact whatsoever with his fellow inmates. This could only be done by having individual cells for each inmate, no mingling at any time or place, whether for meals or exercise, or any other community activities.

This Court does not believe the legislature, when it passed the above statute, intended the drastic measures above referred to should be placed in force by the State of Illinois. To make the State an absolute insurer of the personal safety of its inmates would be granting an inmate of a State penal institution far more protection than is granted to the average citizen in his daily walk of life. There are some dangers naturally inherent on the inside of a penal institution as well as on the outside.

We do not believe that the State should be held responsible for instances such as the one in this claim.

Claim dismissed.